May it please the court. My name is Frank Agostino. I represent the appellants Mr. and Mrs. Kaufman. I would ask to reserve three minutes for rebuttal. Yes, you may have it. Thank you, Your Honor. This is the second time we're here. Welcome back. Thank you, Your Honor. The sole issue on this appeal is whether the tax court's assessment of penalties as a result of the Kaufman's donation of a conservation easement on their home to a qualified easement holding organization should be sustained. The appellants respectfully submit that the key to this appeal is the legal definition of a good faith investigation for purposes of the penalty provisions of the tax code. More specifically, the appellants would request that the court, like the Fifth Circuit in the White House case, adopt an objective test so that when evaluating the facts and circumstances of a unique issue like the valuation of a facade easement donation, that we look at the facts and information. I don't understand what the argument is, so bear with me. Yes, Your Honor. The tax court actually held an evidentiary hearing, and it evaluated the credibility of witnesses, it evaluated a number of documents, it made a reasoned decision. The standard of review in this court for findings of fact is that the tax court would have had to commit clear error. The tax court may have applied an objective standard of review. I don't know whether you argue that to the tax court or not. But if you're asking us to abandon the clear error approach to underlying factual findings, then that's different than an objective test. You seem to be arguing that the objective test means we have de novo review and we evaluate the facts ourselves. If that's what you mean, that isn't our rule, and I don't know why we would adapt such a rule. Your Honor, what we're saying is Judge Halpern and Kaufman adopted the test of honesty in belief. The way he analyzed honesty in belief is an evaluation of a subjective intent of the donors as opposed to the objective. And our argument is twofold. One, we believe that even under the clear error standard that the judge was wrong. But two, that he adopted an evaluative model that was different than the White House, Chandler, Scheidelman, Evans, and all of the other easement cases that have been tried so far that have found no penalty. And I'll give you the reason why we think he's adopted the wrong test. And it does meld into also the clear error analysis. Before you get to that, though, are you saying, to just follow up with Judge Lynch's question, that you argued that below that he had adopted the wrong standard? No, well, he hadn't applied the penalties yet. I mean, we had argued below that. Hang on. Are you saying that you argued to him the standard that should have been adopted? That. That he was bound by the Fifth Circuit objective test. That good faith is based on. Did you tell him that? That's what we're trying to figure out. We're trying to figure out what you raised below so that it's properly preserved here. I didn't anticipate the subjective test, so we always argued based on an objective test. This honesty and belief standard, I think, is brand new and unique to Judge Halpern. I don't believe that any of the other courts have adopted that test. I mean, I tried the Scheidelman case. I tried the Zarlingo case. The honesty and belief versus the honesty and fact is something that was unique to Kauffman, and that's why it's the only case that's come out with a different evaluation of the penalties. Not necessarily. Not necessarily, Your Honor. That is the taxpayer's argument on that. And to take it back, undisputed fact, there were no prior sales of easement-encumbered properties before the Kauffman case, right? The taxpayer's expert witness, the government's expert witness agreed on that. The evidence at trial agreed on that. So what did we have to determine the valuation parameters that the test should be applied to? What we did have is the fact that this was a program that was promoted by the Internal Revenue Service and the National Park Service. We did have the literature that said in general, not specifically to the Kauffman's home, but that in general easement values would be between 10 and 15 percent. In evidence is the National Park Service brochure telling potential donors that they needed to get a qualified appraisal, but all of the examples that were used for the donors was between 10 and 15 percent. So if you went, undisputed, you went to the government's website at the time, in general rules, the range was 10 to 15 percent. Now, unlike every other section of the code where taxpayers are competent to prepare their own returns and competent to value gifts to donees that are not charities, this section of the code that we're dealing with has a unique rule. It says that in order to value your property for purposes of a charitable donation, you need to hire, one, a qualified appraiser, a term defined by the Internal Revenue Code, to produce a qualified appraisal. And absent the satisfaction of this condition proceeding, the getting a qualified appraiser to produce a qualified appraisal, that it's a non-starter. You can't take a deduction. The tax court ruled in your favor on whether the appraiser was qualified. That was itself a close question, but they came out in your favor. So how does it help you in getting to error in the ruling below? Because the second part of reasonable cause, so we established the first part of reasonable cause to avoid penalties. We did what the code required. Now, the second element to that is a good faith investigation. You could have gotten the easement you wanted without doing that. This doesn't help your argument. You couldn't even take the donation without the reporting requirement. So the second part of it is the good faith investigation part, correct? So the good faith investigation part, we go back to Boyle. When a taxpayer hires a qualified professional to produce a document in connection with a tax return, the code has never required the taxpayer to second guess the opinion of the qualified professional. The Supreme Court in Boyle essentially said that would defeat the purpose of the getting the professional to begin with. So the mere fact that the expert was wrong does not result in the penalty. But you're arguing it as though it gives you an immunity from the penalty, which it does not do. Your Honor, step one, step two, the immunity comes from honesty in fact. The taxpayer is not competent to value the easement that is donated to charity. Step two, he must hire a qualified appraiser to do that. Step three, we need a good faith investigation. But the good faith investigation in this case would be providing the professional, mandated by the code, with truthful information necessary to produce the document that is required by the code. In this case, we went a step further. The taxpayer went to his long-time return preparer before entering into the transaction. And although he didn't ask the return preparer to revalue the property, which Boyle says we don't have to do, we don't have to get a second appraisal, but he asked them to look at it. And the testimony was unrebutted. That he did look at it. He said it was consistent with the types of appraisals that he had seen before and that in fact he thought it was low. So the only fact that would indicate the taxpayer didn't have good faith is what we indicate suggests good faith. He read the appraisal. He asked questions of the trust. Now the trust, the irony here is had the trust said everything was perfect, the tax rate would say you can't rely on anything the trust said because they're interested in the outcome. They want the donation. And what does the trust say? Well, in New York, some big buildings, some big building owners, they didn't have a problem with it. Or that 26 properties in Washington didn't fail to appreciate over time. And what Gordon Kaufman said at trial is that was mildly informative, but that more probative that established his good faith was the materials that he saw. The IRS materials generally 10 to 15%. How could he know that the general rule would not apply to his property? The opinion of his accountant who said this was there and the opinion of the person that was engaged specifically to provide compliance with the law. Your time at present is coming to an end. I'd like to ask Judge Kayada if he has a question for you. Thank you. Yes, I could. Don't these emails suggest that, as I understand it, the client basically announced he didn't want to do the transaction if there would be such a substantial reduction in the value of the property as indicated by the easement. It was only after he received assurances that the value would not go down that he went forward with the transaction. Two points. He was, I mean, I think the email demonstrates that he read it and he said, wow, this could be more than the tax deduction. Two, the facts in the email would prove the trial weren't true. I mean, he found it mildly informative. But objectively, I mean, the question that should be asked is, what other evidence was there that Panlin was wrong? I mean, other than the court's decision multiple years later, there was really no positive information because there was no comparable out there at the time, Your Honor. So I think the email actually demonstrates that the taxpayer did what he was supposed to do. He made a good faith investigation. He got information that was mildly informative, but he waited against more reliable information, the IRS website, the National Park Service, and his accountant of many, many years. Thank you, counsel. Thank you, Your Honor. Mr. Erda. May it please the Court, Patrick Erda for the Commissioner. I'd like to begin with Judge Chiata's question. The email is the important fact in this case, which supports the tax court's decision. The tax court didn't err on the two points, and there are two points. I want to unwind a little something of what opposing counsel said, both of which compel a finding in favor of the Commissioner on the gross valuation, the statement penalty. I'm not sure you want to set a goal for yourself of compelling a finding. It's enough that it's not clear error. You're, of course, right, Chief Judge Lynch. It was not clear error because there was ample evidence supporting the tax court's decision. Now, there are two different important points. There's, first, the good faith investigation, which under the gross valuation statement penalty has to be shown to get to the second showing of whether the taxpayers had reasonable cause and good faith in claiming their deduction. Now, both of those, the tax court ruled in favor of the Commissioner, and that was not clear error. As to the good faith investigation, the tax court correctly looked to the facts and circumstances to see whether there was a good faith investigation by taxpayers as to the value of this property, and that's what under 6664C2 of 26 U.S.C. they looked to. It's really to the value of the property. Here, there was no good faith investigation because after obtaining the appraisal, Mr. Kauffman emailed the NAT, and the NAT said, listen, don't worry about this. This will not affect your property value. In essence, the deduction would be something for nothing. At that point in time, Mr. Kauffman did nothing else. Now, there was a comment in Mr. Agostino's argument that he talked to the accountant. The accountant testified at trial that he made no representation as to valuation. That's on JA388. In fact, the accountant said that his role is not to advise clients whether they should make a donation or not. He was only certifying the deduction was properly documented. That's JA380. Taxpayer is responsible for what they put on the tax return. He, in fact, said that he will act expertise to say anything about this, and this was the first and only time that a client actually went through with a conservation easement. So there was no good faith investigation. That stops the matter right there. And the tax court did not clearly err in saying between the e-mail and the accountant's testimony and Mr. Kauffman's own testimony that there was no good faith investigation. I'm sorry. I've not read the accountant's testimony. Were you suggesting he had other clients who considered such easements and then decided to reject them? There was one client, according to the accountant, that asked him if there was a deduction for a conservation easement and then didn't do anything besides that. So he said he was familiar with the easement program, but he hadn't done it before or he had no plans. Now, what that does is it stops the inquiry right there. Without a good faith investigation, there is no ability to claim an exception for good faith and reasonable cause in the context of a gross valuation statement penalty, which is what we have here. But even turning to whether there was reasonable cause in good faith. Before you move on, there's no requirement in the code that there be a second appraisal. And I'm trying to figure out what it is you think he should do. In the context of this case when this is new stuff, what would be the next step in completing a reasonable investigation? Well, I think that's a great question, Judge Thompson. In White House, there were... Just tell me. Okay. Well, it's a facts and circumstances analysis, okay? That's what the Fifth Circuit said in White House and what should apply here. What that would mean in this case is, yes, he would read and analyze the appraisal. He'd say, okay, does the appraisal make sense? If he had any questions, which he did here, I think it was totally right to ask somebody about those questions. The problem here is when he got a huge, glaring red flag, that's not where the investigation ends. That's what the task force was saying in terms of an honest effort at a good faith investigation. That wasn't this. I think that if you read the appraisal, because again, you have to obtain the appraisal. I think that you have to analyze it. At that point in time, once you analyze it and you find a red flag, then yes, I do think that you need to talk to a realtor. You have to talk to somebody with some sort of expertise to clear up that red flag before saying, I'm going to claim a $220,000 deduction for something that somebody else, the person who recommended this appraiser, is telling me is actually worth zero. That's a glaring red flag. A good faith investigation would take that into account and would continue. Talking to a realtor is getting a second appraisal. Well, it could be, but I think that, yeah, I think that the good faith investigation will vary depending on the facts of the case. The Fifth Circuit in the White House, at page 250 of that opinion, actually said just that. We review the totality of the facts and circumstances. Obtaining a qualified appraisal, analyzing that appraisal, commissioning another appraisal, and submitting a professionally prepared tax return is sufficient to show a good faith investigation as required by the law. So in that case, the Fifth Circuit said there is something that has to be done based on the facts and circumstances in occasion, or on occasion, excuse me, that would go beyond just obtaining the appraisal. I think that, at the very least, you need to read and analyze the appraisal, and if there are any questions, you need to resolve those questions so that, again, you're not sticking your head in the sand. When you have something like this email. Before you get to your second prompt, the email you say is a glaring red flag, and you say there's no inconsistency with the White House decision because it basically says, look for red flags, and if you see one, then you have to take other steps. But your opponent started by talking about the trial judge's language here as though honesty and belief made it sound like it was a subjective test that he was applying. I'd like you to address that point and then come back to your second point. Sure, Chief Judge Lance. I think it is a subjective test, and I don't think the White House is inconsistent. The White House itself looked at facts and circumstances. Again, we're trying to evaluate what it means to be a good faith investigation, and what the task force said was you need to give an honest effort in explaining what your belief was as to this value. And the task force then said, okay, what did the Kauffmans do in this case? What did the taxpayers do that showed a good faith investigation? And that's where the task force said, okay, they didn't conduct a good faith investigation because of the reasons I discussed. Yes, Judge Thompson. So if it's subjective, it means that you're asking the task force to hone in on the particular attributes of the taxpayer, aren't you? I mean, the task force, we know that these folks were professionals. So we're looking at the Kauffmans' difference than, say, we would look at their housekeeper? Yep. I think that's totally right, Judge Thompson. It's one of those subjective findings, just like reasonable cause and good faith itself. Once you even get past the good faith investigation, you look to the education, knowledge, and skill of the taxpayer in determining whether they acted with reasonable cause and in good faith in claiming a deduction. So too here in the good faith investigation. Well, good faith implies a certain subjectivity. If one made it a totally objective test, then a taxpayer could go through all the hoops fully intending to commit fraud on the IRS. Is there any real discussion in the case law about subjective and objective? Not so much. So are you venturing your own opinion? I am venturing my own opinion to a certain extent, but also based on what the Fifth Circuit has said in White House. Because, again, I believe that that court had more of a subjective test where they actually looked at what the taxpayers did. It wasn't so much a very cut-and-dried test. It was, in this set of circumstances, what would be good faith investigation? Would you then hit your second point? Sure. And the second point is whether there was reasonable cause in good faith. And here, too, the tax court did not clearly err. In this situation, the regulations, 1.664-4B1, provide that the tax court has to take into account all the facts and circumstances, including, and most importantly, the taxpayer's effort to assess proper tax liability, judged by, again, the experience, knowledge, and education of the taxpayer. While, as Chief Judge Lynch pointed out, reasonable reliance can establish good faith, it's not an absolute immunity. Here there was no reasonable reliance on the accountant. As I stated, the accountant had really never done this before. The Tenth Circuit has broken out reasonable reliance into whether there was reliance and whether there was reasonable. The accountant actually testified, I never gave the Kauffman's advice on valuation, and, in fact, the taxpayers came in set on donating this easement. So they had done the research. They had done the analysis. I made sure everything was consistent with the proper forms under the code for claiming the deduction. So there is no reasonable reliance on the accountant. And in terms of the appraisal, again, there can be reasonable reliance on the appraisal, but the regulations also state that factors must be taken into account as to the appraised value, the circumstances under which the appraisal is obtained, and the appraiser's relationship to the taxpayer or the activity which the property is being used. Here, all of those factors weigh in favor of the tax court's finding. Here there was no reasonable reliance on this appraisal because, quite frankly, the entity that set the taxpayers up with the appraiser expressly said, even though the appraisal came in at $220,000, it's really worth nothing. It will have no effect on your value. And that's why the taxpayers did not have a reasonable cause and good faith. And going back to your question, Judge Thompson, earlier, this is one of those very subjective analyses. Here you have two highly educated, highly sophisticated taxpayers. And you do take that into account, most definitely under the regulations, for the reasonable cause and good faith analysis. So even getting past the good faith investigation, which, again, I don't think that we do, once you get to reasonable cause and good faith, you take those things into account under the regulations. And there is ample evidence in favor of the tax court's decision. From the IRS point of view, why is this case important? Apart from the you have to look at the particular facts and experience, knowledge, training of the taxpayer. Is that the primary point? Well, I think that from the IRS's point of view, you want to make sure that people do not risk the audit lottery where they take very aggressive positions, which they should know better, in the hopes that they won't draw one of the red flags from the IRS computer. And, again, it's an institutional concern to make sure that people are paying the fair taxes. So I think that that's a very big concern in all types of penalty cases, especially here when you have two very sophisticated taxpayers who had a red flag and a glaring one at that that should have told them to do differently. How many of these historic easement valueless cases is the IRS seeing these days? Last time you were here, this was an emerging problem. It seems to be going away because of, quite frankly, the Second Circuit's decision in Sheitelman, in which the Second Circuit said, you know, there is no 10% to 15% safe harbor, which this court said in Kaufman 1 in its last footnote. You look to the fair market value before and after and determine if there was any difference in what the value would have borne. And so I think that it's starting to get resolved. So these cases are starting to go away, fingers crossed. I'm going to ask Judge Kayada if he has any questions for you. Sure. Yes, I'm confused by your statement that the good faith defense involves solely a subjective test. Are you saying that if someone did a patently unreasonable investigation, ignoring red flags, but in their heart of hearts they thought that the value was correct, that that's enough? Well, actually, Judge Kayada, maybe I should get out of the subjective-objective boxes and more into the facts and circumstances description of the test. That's what I'm trying to say, inelegantly, though I am. It's really a facts and circumstances analysis. And, yeah, I do think that we will never know the heart of hearts of somebody, but we can say, you know, based on these facts, did you commit a good faith investigation into determining the proper value? And we can look at what you did. And so do you view what the tax court did here as finding that the Kaufman didn't believe the appraisal or as finding that their belief of the appraisal was unreasonable? I believe, based on what the tax court said in the good faith reasonable cause portion of the opinion, that they actually thought it was unreasonable. Or they just buried their heads in the sand and said, you know, this is good enough for us. Remember, taxpayers sent an email two hours after receiving the email from the NAT saying, this is valueless. And taxpayers said, okay, we're going to go ahead with this. So I think that there's a strong indication that this could be one of those valueless circumstances that the taxpayers were aware of. But I think that there's, at the very least, and I think the tax court said this, that whatever their investigation was, their investigation consisted of reading the appraisal, reaching out to the NAT, the NAT telling them something very concerning. And these are sophisticated analytical taxpayers that know that zero is a lot different than $220,000. And then just not doing anything else except going ahead with claiming $220,000 as a deduction. So I think that the tax court was saying that that was not a good faith investigation into whether the value was actually $220,000. Does that answer your question? Thank you. Thank you. Rebuttal? Yes, Your Honor. The context of all of this is, in 2003, there were no prior easement sales. So the first point by the government, we believe that this is exactly analogous to White House. In White House, the second appraiser was gotten before trial, not before the tax returns. So one, we would think that the right time to analyze the good faith is before you sign the tax return, not before trial. But two, at trial, although it wasn't admitted for the value of this piece of property, the Patusic report is admitted to show that easements do not have zero value. That on the basis of hindsight later, there was a belief that these easements do have a drag on value. So the objective fact is that there were no prior sales for which the Kauffman's judgment as non-appraisers should have overcome the judgment of an appraiser. You know, that works two ways. If there were no prior sales establishing that such easements actually had value, I would, as a reasonable taxpayer, have proceeded very cautiously. And these taxpayers did. I mean, one, this isn't a case like a private tax shelter. The National Park Service and the Internal Revenue Service had on their websites and in their materials that generally easements have a value of 10 to 15 percent of the value of the property. They're all of the examples in the materials promoted by the government on making these easement donations, which is something Congress said we want done. And Congress also said you can only do these easement donations in districts that are already heavily regulated or properties that are heavily regulated. So the mere fact that there's already regulation does not mean that the properties have no value, right? Whenever you give up any part of the bundle of rights, there may be an effect on value. The Internal Revenue Service engineers had said in general it was 10 to 15 percent. Again, that doesn't give you the specific intent of this property. That's why the code says you will hire a qualified appraiser to do a qualified appraisal of your property. There was nothing in the report of the Baha'i emails that said your property is different from these general other properties that are going to be within the 10 or 15 percent range. So if the good faith is honesty and fact, you would say to yourself, what more investigation should Mr. Kauffman have done other than going forward with the program that Congress had set? Thank you. You've both done a fine job of representing your clients. Thank you. Thank you very much.